**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| **IN RE:** | ) |
| | ) |
| **PAUL STEPHAN BASSETT,** | ) **CASE NO. 25-20315-CAN** |
| | ) |
| **MICHELLE MARIA BASSETT,** | ) **CHAPTER 11** |
| **(DECEASED).** | ) |

## UNITED STATES TRUSTEE'S OBJECTIONS TO DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION

Pursuant to 28 U.S.C. § 586(a)(3) and 11 U.S.C. §§ 1125 and 1129, the United States

Trustee ("UST") respectfully objects to the Debtor's Plan of Reorganization dated January 13,

2026 (ECF Doc. No. 63)(the "Plan"). In support hereof, the United States Trustee respectfully

alleges as follows:

### PROCEDURAL AND FACTUAL BACKGROUND

1.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157.

2.      Debtors Paul Stephan Bassettt and Michelle Maria Bassett (the "Debtors") filed an

individual Chapter 11 voluntary petition on July 17. 2025, under the provisions of

Subchapter V of Chapter 11.

3.      The Debtors own an interest in Sedalia Aesthetics, LLC, which confirmed its own

Subchapter V Plan in Case 24-20453.

4.      The Debtors also own Bassett Holdings, LLC, which owns two pieces of real estate

primarily used in the Sedalia Aesthetics business.

5.      Unfortunately, Mrs. Bassett passed away during the pendency of the case and prior to the

Plan being filed.

6.    The Debtors are not current on operating reports.  The last filed operating report received was for November, 2025.  The December report was due on January 21, 2026, and the January report is due February 23, 2026 (because of the weekend).

7.    The Debtors have not timely complied with Fed. R. Bankr. P. 2015.3 by filing financial statements for the entities it controlled which are necessary to review the plan.  Rule 2015.3 requires such statements be filed seven (7) days prior to the 341 meeting and every six months thereafter.  Here, the meeting of creditors was set on August 21, 2025, and such reports were due on August 14, 2025 and February 14, 2026.  The Debtors filed late reports on August 28, 2025, which required the meeting to be continued for several weeks.  They have not filed renewed reports.

**PLAN OBJECTIONS**

8.    The Plan improperly classifies class of claims in violation of Section 1122(a) because it appears to group at least four different unsecured creditors with different collateral and claims into a single class (Class 1) and proposes different treatment for each creditor.

9.    The treatment of Class 4 (Balboa Capital Corporation) is unclear.  The Debtors suggest they will challenge the judgment lien on the homestead, and further suggest that creditor release the lien without litigation.  However, the Plan does not specify how the creditor will be treated if the lien challenge is unsuccessful or if the creditor does not release the lien, nor does it specify if the creditor would be treated as a general unsecured creditor, or propose some other treatment if the creditor declines to release the lien.

10.   Although in a Subchapter V case the Debtor does not file a disclosure statement, the plan must still contain adequate information from which creditors make determine whether to consent to confirmation under Section 1191(a) or to vote in favor of the plan.  The Plan

does not contain such information because the budget, income and expense projections are summarized on Exhibit Five in a fashion which makes them unusable.  For example, the Debtor projects annual expenses of $96,000, but there is no breakdown or explanation of that number.  The Debtor projects $142,000 in income, but it is unclear whether that includes income from the business entities.

11.    Due to the lack of detailed projections, the United States Trustee cannot determine whether the Plan complies with Section 1191(c)(2) if confirmation is not consensual. However, the United States Trustee note that even the highly summarized information in Exhibit Five suggests that the Debtors are not committing all of their disposable income to creditors because they project a total surplus after plan payments of over $12,000 over the life of the Plan.  This amount constitutes disposable income, which in a non-consensual cramdown plan confirmed under Section 1191(b) must be paid to unsecured creditors.

12.    Feasibility is a concern in this case; however, the United States Trustee lacks adequate information to make a determination if the Plan as proposed is feasible.  This Court has long held that a Debtor must file its' current monthly operating reports and that such reports should be available for review by creditors before the Court will approve a disclosure statement or confirm a plan.  *In re Hillside Park Apartments, L.P.,* 205 B.R. 177, 183 (Bankr. W.D. Mo. 1997).  Here, the Debtor has not filed the January Monthly Operating Report, and the February report will be due shortly.  Further, the Debtor has not filed the required renewed Rule 2015.3 reports to show the income and expenses (and any profitability or loss) related to the operating entities.  Accordingly, feasibility is unknown at this time.

13.   The Plan, as proposed, contains an incorrect liquidation analysis (which is misleading) and does not appear to comply with the best interests of creditors test if the unsecured creditors do not vote in favor or consent to the Plan (assuming that the liquidation analysis not misleading).  First, the liquidation analysis fails to include life insurance which the United States Trustee understands Mr. Bassett received.  The schedules reflected a policy with a face value of $36,000 insuring Mrs. Bassett.  The proceeds of such policy are property of the estate and would be liquidated in a Chapter 7 case under Section 541(a)(5)(C) of the Bankruptcy Code.  Additionally, the Debtors have overstated the line item "Chapter 7 trustee fees and expenses."  Assuming this is a proper consideration, the Debtors have claimed projected expenses of $34,698.27.  Based on the expected disbursements, the Chapter 7 trustee fees due under Section 326(a) would be approximately $13,000.  It is unclear on what basis the Debtors assert another $20,000 in expenses (or nearly 10% of the total actual liquidation value).  Based on his review, the United States Trustee asserts the Debtors have understanded the liquidation value of the property of the estate by approximately $50,000, and the actual value is in excess of $205,000.  Here, the Debtors propose to pay only $167,400 to general unsecured creditors, so the Plan, as proposed, does not meet the best interests of creditors test based on a corrected liquidation analysis (making all other assumptions by the Debtors in their analysis), absent informed consent and agreement of the general unsecured creditor class.

14.   Accordingly, for these reasons the Plan does not comply with the Bankruptcy Code and cannot be approved pursuant to 11 U.S.C. § 1129(a)(1).

WHEREFORE, for the foregoing reasons, the United States Trustee respectfully requests the Court's order denying confirmation of the Plan, and for such further relief as may be just and proper.

Dated: February 20, 2026

Respectfully submitted,

JERRY L. JENSEN
ACTING UNITED STATES TRUSTEE

By: */s/ Adam E. Miller*
  Adam E. Miller, Mo. Bar #65429
  Trial Attorney
  Office of the U.S. Trustee
  400 East 9th St., Ste 3440
  Kansas City, MO 64106
  Telephone:  (816) 512-1940
  Email: adam.e.miller@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States Trustee's Objection to Debtors' Disclosure Statement and Plan of Reorganization was served upon all parties receiving electronic notification or by first-class mail, postage prepaid, this 20th day of February, 2026.

By: */s/ Adam E. Miller*
  Adam E. Miller