**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | | |
|---|---|---|---|
| In re: | PAUL STEPHAN BASSETT AND MICHELLE MARIA BASSETT (DECEASED) | ) | Case No. 25-20315-CAN |
| | Debtors and Debtors-in-Possession | ) | Chapter 11 (Voluntary), Subchapter V |

# FIRST AMENDED SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION DATED April 3, 2026

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY ENTER OBJECTION DATE/TIME

YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [ ]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:

Ryan A. Blay
WM Law
15095 W. 116th St.
Olathe, KS 66062

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [ENTER HEARING DATE/TIME] IN COURTROOM [ROOM] AT THE U.S. BANKRUPTCY COURT, WESTERN DISTRICT OF MISSOURI, 400 E. 9th St., Kansas City, MO 64106

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

April 3, 2026
/s/ Ryan A. Blay
WM Law
15095 W. 116th St.
Olathe, KS 66062

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

The Debtors' Plan will contain 7 classes of voting creditors: Secured creditors (5 classes, including Balboa Capital Corporation), priority tax creditors, general unsecured creditors,

The Debtors project this plan to be a 4 year plan.

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1. Nature of the Debtors' Businesses.

The Debtors are involved with three distinct businesses. Sedalia Aesthetics operates a medspa and beauty bar in Sedalia, Missouri. Bassett Holdings, LLC owns real estate located at 1700 S. Ingram and 1704 S. Ingram, both in Sedalia, MO. Merritt Wares LLC is a non-functional business with a modest bank account and is not operating.

### 1.2. History of Business Operations of the Debtor

The Business operations of Sedalia Aesthetics can better be seen in Chapter 11 case number 24-20453, in the Western District of Missouri. Other information is available on the Debtors' personal income tax returns.

### 1.3 Filing of the Debtor's Chapter 11 Case.

On July 17, 2025, the Debtors filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in the Western Distinct of Missouri.

### 1.4. Legal Structure and Ownership.

The Debtors are individual debtors. Joint Debtor Michelle Bassett passed away after the filing of this Case.

### 1.5. Debtor's Assets.

The Debtors' Assets are attached as Exhibit 1, mainly replacement value (except valuation of any intellectual property and bank accounts).

### 1.6. Debtor's Liabilities.

The Debtor's Liabilities are attached as Exhibit 2. Most creditors listed have filed a proof of claim in this Bankruptcy.

### 1.7. Current and Historical Financial Conditions.

**Attached as Exhibit 3 are the following financials: The Debtors' Monthly operating reports for January-March 2026, their 3 most recently filed reports. Reports for April and May 2026 will be filed after this Plan is balloted. Income Tax Returns for 2022-2025 have been submitted to the Office of the United States Trustee and are available upon request.**

### 1.8. <u>Events Leading to the Filing of the Bankruptcy Case.</u>

The Debtors' filing was largely driven by the guarantee of liabilities for Sedalia Aesthetics, LLC, their wholly owned LLC. Sedalia Aesthetics filed its own Chapter 11 Bankruptcy, case number 24-20453, in the Western District of Missouri. That Chapter 11 plan has since been confirmed.

### 1.9. Significant Events During the Bankruptcy Case.

Significant events during the Debtors' bankruptcy case, include:

- Court approval of counsel approved by the Bankruptcy Court.
- The Subchapter V Status Report and hearing with this Court.
- The unfortunate and unexpected passing of joint debtor Michelle Bassett
- The opening of a Debtor in Possession bank account
- Approval of initial compensation for Debtor's counsel
- Resolution of a Motion for Relief from Stay filed be one of Debtor's creditors on Debtor's primary motor vehicle.

### 1.10. Projected Recovery of Avoidable Transfers

☐ The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

OR

☒The Debtor estimates that up to $Unknown may be realized from the recovery of fraudulent, preferential or other avoidable transfers. While the results of litigation cannot be predicted with certainty and it is possible that other causes of action may be identified, the following is a summary of the preference, fraudulent conveyance and other avoidance actions filed or expected to be filed in this case:

| Transaction | Defendant | Amount Claimed |
|---|---|---|
| Judgment lien on debtors' homestead created by the Registration of Foreign Judgment in Pettis County Case No. 25PT-CC00062 on April 22, 2025 created within 90 days of the filing of the petition. | Balboa Capital Corp. | $112,407.23 |
| | | |

OR

[If the Debtor does not yet know whether it intends to pursue avoidance actions]

☐The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation byEnter a date. . If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

# ARTICLE 2
# THE PLAN

The Debtors' Plan must describe how their Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1. <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the

Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.
3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | n/a | Payment through the Plan as follows: |
| Administrative Tax Claim | $1,208 per proof of claim 38-1 filed by the Missouri Department of Revenue | Payment through the Plan as follows:<br><br>Payment in full in a single lump sum payment on the Effective Date. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | n/a | Payment through the Plan as follows: |

| | | |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court | $12,000 | After Bankruptcy Court approval, Payment through the Plan as follows: Debtor will apply all available funds in trust to outstanding balance. From there, estimated payments of $500 per month for 24 months until outstanding approved balance is paid in full. |
| Clerk's Office fees | N/a | Paid in full on the Effective Date if any such fees exist. |
| Other Administrative Expenses | n/a | Payment through the Plan as follows: |
| Subchapter V Trustee | $4,000 | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Paid directly by Debtor in full within 30 days of Court approval unless otherwise expressly agreed upon by the Subchapter V Trustee. |
| TOTAL | $17,208 | |

B. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Missouri Department or Revenue – Individual Income Tax (Proof of Claim 3) | $4198.36 priority | Unknown | Payment Interval = 24 months<br>[Monthly] payment = **$187.97**<br>Begin Date = May 1, 2026<br>End Date = April 1, 2028<br>Interest Rate % = 7.0%<br>Total Payment = $4511.28<br><br>The unsecured portion of this claim shall be paid with general unsecured creditors, below. |
| Missouri Department or Revenue – Individual Income Tax (Proof of Claim 34) | $9,046.84 total ($8,629.54 priority) | Unknown | Payment Interval = 24 months<br>[Monthly] payment = **$386.37**<br>Begin Date = May 1, 2026<br>End Date = April 1, 2028<br>Interest Rate % = 7.0%<br>Total Payment = $9,272.88<br><br>The unsecured portion of this claim shall be paid with general unsecured creditors, below. |

| | | | |
|---|---|---|---|
| Internal Revenue Service – Individual Income Tax (Amended Proof of Claim 37) | $149.42 total; $96.72 priority tax | 10/20/2025 | Payment Treatment: Debtor will pay the $96.72 in a lump sum within 14 days of the Effective Date of the plan, leaving the IRS as an unimpaired creditor. For the remaining $52.70, the IRS shall be treated with other general unsecured creditors in Class 7. |

**2.2 <u>Classes of Claims and Equity Interests.</u>**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: Nebraska Furniture Mart (Claim 1):<br><br>Collateral description =<br><br>Perfected Security Interest in Household Goods Sold<br><br>Allowed Secured Amount = $3,904.10<br><br>Priority of lien = 1st priority<br><br>Principal owed =$8,544.67<br><br>Pre-pet. arrearage = $unknown<br><br>Total claim =$8,544.67 | No | Impaired | Total Principal: $3904.10<br>[Monthly Pmt.] = $174.66<br><br>Payments Begin = May 1, 2026<br><br>Payments End = April 1, 2028<br><br>Interest rate % = 7%<br><br>Total paid: $4,191.84<br><br>Unsecured portion of claim to be classified and treated as a general unsecured Claim |
| 2 | Secured Claim of Ally Financial (Claim 8):<br><br>Collateral Description: PMSI on 2017 Lincoln Continental, VIN:1LN6L9VK9H5624583<br><br>Priority of lien: 1st priority<br><br>Principal owed: $16,175.24<br><br>Pre-petition arrearage: $96.05<br><br>Total Claim: $16,175.24<br><br>*Vehicle was purchased within 910 days of filing the bankruptcy petition | No | Impaired | Total Principal: $16,175.24<br>[Monthly Pmt.] = $499.44<br><br>Payments Begin = May 1, 2026<br><br>Payments End = April 1, 2029<br><br>Interest rate % = 7%<br><br>Total paid: $16,175.24 |

| | | | | |
|---|---|---|---|---|
| 3 | Secured claim of Porsche Credit (NO CLAIM FILED)<br><br>Collateral Description: PMSI in 2015 Porsche Macan S, VIN WP1AB2A58FLB80710<br><br>Priority of lien: 1st priority<br><br>Principal owed: $21,418<br><br>Pre-petition arrearage: unknown<br><br>Total Claim: $21,418 | No | Impaired | Debtors formally surrender their interest in the collateral to Porsche Credit in full satisfaction of its secured claim.<br><br>Creditor should reach out to debtor's counsel to arrange a surrender of the vehicle. |
| 4 | Secured claim of Wood & Huston Bank (NO CLAIM FILED)<br><br>Collateral Description:<br>Deed of Trust on homestead real estate located at 717 W 6th St, Sedalia, MO 65301<br><br>Priority of lien: 1st priority<br><br>Principal owed: $221,461<br><br>Pre-petition arrearage: unknown<br><br>Total claim: $221,461 | No | Unimpaired | Debtors shall continue to make monthly payments on the loan, secured by the deed of trust. The remaining debt is a long-term debt due after the plan concludes, and the unpaid principal amount shall neither mature automatically nor be discharged by virtue of the completion of the Debtors' plan<br><br>Payments are approximately $1,700 per month and this shall be reflected in the debtors' cash flow projections in support of confirmation of this plan |
| 5 | Secured Claim of Balboa Capital Corporation (Claim #36)<br><br>Collateral description: Judgment lien on homestead real estate located at 717 W. 6th St, Sedalia, MO 65301<br><br>priority of lien: 2nd Priority<br><br>UCC Financing statement filed 3/4/2025 as file No. | No | Impaired | Debtors take no action with respect to the Financing statement as it pertains to Sedalia Aesthetics, LLC, as Sedalia Aesthetics is in its own Chapter 11 Bankruptcy reorganization.<br><br>As to the Debtors' homestead, the judgment |

| | | | | |
|---|---|---|---|---|
| | 20250304000247614 with the Missouri Secretary of State *For information purposes only* noting the money judgment entered by the District Court, 419th Judicial District, Travis County, Texas, Cause D-1-GN-24-005396 in the amount of $97,184.81 awarded to Balboa Capital Corporation against Defendants Michelle Bassett, Paul Bassett, and Sedalia Aesthetics, LLC | | | lien created by the Registration of Foreign Judgment in Pettis County Case No. 25PT-CC00062 on April 22, 2025 was created within 90 days of the filing of the petition. Accordingly, it is subject to an adversary action for recovery of a Preferential Payment under 11 U.S.C. §547 or by other theories under state law or bankruptcy law.<br><br>Balboa Capital Corporation, to avoid such litigation, may elect to release its UCC lien, deem its judgment against the Debtors only as satisfied and amend its claim to reflect an unsecured claim against the Debtors to participate in distributions to general unsecured creditors.<br><br>Should Balboa refuse to release its lien or litigate the matter, Balboa shall be treated as a general unsecured creditor under Class 7. If litigation or a lien challenge is unsuccessful, the Debtor shall provide for payment of the allowed secured claim as determined by this Court with the same 7% interest rate used to pay other secured creditors through this Plan. |

B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | Missouri Department of Revenue Priority unsecured claim pursuant to Section 507(a)(8)<br>Total amt of claims = $12827.90 | Impaired | Treated as noted in Section 2.1(B) above |
| 6 | Internal Revenue Service Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims = $96.72 | Unimpaired | Treated as noted in Section 2.1(B0 above |

C. Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Class[es] through , which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | [1122(b) Convenience Class] | n/a | N/a |
| 7 | General Unsecured Class [including any claims set forth in Section 2.2.A, above] consisting of the following creditors:<br><br>Claim 1 – Nebraska Furniture Mart - $4,640.57 unsecured portion<br>Claim 2 – Commerce Bank - $17,386<br>Claim 4 – Capital One - $10,045.95<br>Claim 5 – Capital One - $1,482.37 unsecured<br>Claim 6 – Nelnet - $90,712.47 unsecured (STUDENT LOANS) [Listed in Debtors' schedules as Dept of ED]<br>Claim 7 – Arvest Equipment Finance - $90,712.47 unsecured<br>Claim 9 – US Bank - $5,732.96 unsecured<br>Claim 10 – US Bank/Elan Financial - $13,793.48 unsecured<br>Claim 11 – American Honda Finance - $6,978.34 unsecured<br>Claim 12 – Chase - $16,476.03 unsecured<br>Claim 13 – American Express - $45,797.11 unsecured<br>Claim 14 – American Express - $39,352.53 unsecure<br>Claim 15 – American Express - $2098.68 unsecured<br>Claim 16 – American Express - $5,357.48 unsecured<br>Claim 17 – SBA - $527307.36 | Impaired | Unsecured creditors shall receive approximately $200,000 over the course of the plan as follows: a $25,000 distribution (pro rata) on the effective date from Debtor's cash on hand, plus monthly payments as follows:<br><br>Year 1:$2500/month ($30,000 total)<br>Year 2:$2916.66/month ($35,000 total)<br>Year 3: $4166.66/month ($50,000 total)<br>Year 4: $5,000/month ($60,000 total)<br><br>Monthly payments will be distributed on an annual basis with payments tendered on or before April 1 for each calendar year. For year 1's payments, for instance, the payments would be distributed to general unsecured creditors on or before April, 1, 2027. |

| | | | |
|---|---|---|---|
| | unsecured<br>Claim 18 – Portfolio Recovery Associates - $4,032.51 unsecured<br>Claim 19 – Portfolio Recovery Associates - $296.42 unsecured [Listed in Debtors' schedules as Capital One/WSI]<br>Claim 20 – Bank of America - $24,959.44 unsecured<br>Claim 21 – Bank of America - $10,067.30 unsecured<br>Claim 22 – Midland Credit Management - $15,305.78 unsecured [Listed in Debtors' schedules as Barclay's Bank Delaware]<br>Claim 23 – Midland Credit Management - $13,434.99 unsecured<br>Claim 24 – Volkswagen Credit - $2,478.90 unsecured<br>Claim 25 – Quantum3 Group - $5,397.37 unsecured [Listed in Debtors' schedules as Comenity Capital/Saks CC]<br>Claim 26 – Quantum3 Group - $6,075.44 unsecured [Listed in Debtors' schedules as Comenity Bank]<br>Claim 27 – Quantum3 Group - $14,197.40 unsecured [Listed in Debtors' schedules as Comenity Bank/Total Rewards Visa]<br>Claim 28 – Quantum3 Group - $1,708.71 unsecured [Listed in Debtors' schedules as Comenity Capital Bank]<br>Claim 29 – Quantum3 Group - $951.99 unsecured [Listed in Debtors' schedules as Comenity Capital/UltaMC]<br>Claim 30 – Quantum3 Group - $1,437.03 unsecured [Listed in Debtors' schedules as Comenity Capital/Overstock]<br>Claim 31 – Synchrony Bank - $14,559.60 unsecured [reflected on the Debtor's schedules as Syncb/Care Credit Dual Card]<br>Claim 32 – Navitas Credit Corp - $177,886.43 unsecured<br>Claim 33 – M2 Equipment Finance LLC - $126,799.78 unsecured<br>Claim 34 – Missouri Department of Revenue - $417.30 – the unsecured portion from its claim<br>Claim 35 – TD Bank USA - $3,678.61 unsecured | | |

| | | | |
|---|---|---|---|
| | Claim 36 – Balboa Capital - $112,407.23 (as described above in Section 2.2A)<br>Claim 37 – Internal Revenue Service – $52.70 - the unsecured portion from its claim<br><br>Total scheduled claims: $1,413,966.03<br><br><br>The following creditors were scheduled in the Debtors' schedules but did not file claims. Unless a claim objection is filed, these creditors will still participate in payments at the addresses listed in the bankruptcy schedules.<br><br>Abbvie US LLC - $88,301.64<br>Banleaco, Inc. - $38,000<br>Bothwell Regional Health Center - $603.84<br>Bothwell Regional Health Center - $6344.32<br>Central Funding LLC - $71,794<br>CFG Merchant Solutions LLC - $160.136.25<br>Dext Capital – 152,400<br>Merz North America - $72,000<br>Milestone Bank - $76,644<br>MOHELA - $4,334 (Student loans)<br>NCMIC - $34,000<br>Nordstrom/TD Bank - $18,941<br>Nordstrom/TD Bank - $30,312<br>OnePlace Capital -$ 135,287.50<br>Pearl Bassett - $2600<br>Rapid Finance - $55,616.94<br>RH/TD RCS $114<br>RTR Financial Services/Collier County Emergency Medical Services - $830<br><br>Total unscheduled:$948,799.49<br><br>Total general unsecured debt: $2,362,765.52 | | |

D. Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest

holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
| --- | --- | --- | --- |
| n/a | n/a | Unimpaired | n/a |

### 2.3. Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| n/a | None | n/a |
| | | |

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[X] Assumption of Executory Contracts.

The Executory Contract shown on Exhibit 4 (Anytime Fitness) shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults (no such defaults exist).

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

### 2.5. <u>Means for Implementation of the Plan.</u>

The Debtors do not expect any liquidation of assets or other major funding events outside of the ordinary course of business. The Debtors intend to use their monthly surplus to fund their Plan

Subject to the Plan or the order confirming the Plan, on Confirmation of the Plan all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

**2.6. Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor. Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor shall make all Plan payments to creditors under the Plan.

**2.7. Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| n/a | n/a | n/a |
| | | |
| | | |

**2.8. Tax Consequences of the Plan.**

Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.

The following are the anticipated tax consequences of the Plan:

(1) Tax consequences to the Debtor of the Plan:
If the Plan results in a discharge of the Debtor's indebtedness, the Debtor may recognize income to the extent that indebtedness is forgiven or cancelled. However, under Section 108 of the Internal Revenue Code, a debtor in a Title 11 bankruptcy case generally is not required to recognize cancellation of indebtedness income ("COD Income") if the discharge occurs under a confirmed plan and the debtor is under the jurisdiction of the bankruptcy court.

Instead, the Debtor must reduce certain tax attributes—such as net operating losses (NOLs), general business credits, capital loss carryovers, and the basis in assets—by the amount of the discharged indebtedness. The ordering and scope of these attribute reductions are governed by Section 108(b) of the Internal Revenue Code.

The Debtor may also experience changes in its tax year or accounting methods due to the reorganization. Further, if the Debtor is a pass-through entity (e.g., partnership or S corporation), the tax consequences may flow through to its owners.

(2) General tax consequences on Creditors of any discharge:
A holder of a Claim who receives consideration under the Plan in exchange for its Claim will generally recognize gain or loss equal to the difference between (i) the amount realized (i.e., the fair market value of consideration received under the Plan, including any cash and the fair market value of any property or securities), and (ii) the holder's adjusted tax basis in the Claim.
and
(3) the general tax consequences of receipt of Plan consideration after Confirmation:
The federal income tax treatment of any consideration received under the Plan will depend on the nature of the consideration and the holder's specific circumstances

### 2.9. Projections in Support of Debtors' Ability to Make Payments Under the Proposed Plan

The Debtors have provided projected financial information. Those projections are listed in Exhibit 5.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. Ability to Initially Fund Plan.

The Debtors believes that the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit 6.

### 3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtors must submit all or such portion of the future earnings or other future income of the Debtors to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtors have provided projected financial information. Those projections are listed in Exhibit 5 (referenced in § 2.9, above).

The Debtors' financial projections show that the Debtors will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes, of $185.83/month in Year 1, $211.22/month in year 2, $210.22/month in Year 3, and $117.65/month in Year 4, The final Plan payment is expected to be paid on April 1, 2030. Please refer to the Assumptions discussed in Exhibit 5.

You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit 7 .

## ARTICLE 5
## DISCHARGE.

**5.1. [Option 1 -- If § 1141(d)(3) is not applicable]**

Discharge. If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or
(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1. Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided

in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**6.2. Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**6.3. Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4. Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5. Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6. Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may impose additional requirements, including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorizes the

proposed modifications after notice and a hearing.

**6.7. <u>Final Decree.</u>**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**6.8. <u>Creditor Remedies.</u>**

If the Debtor fails to make two or more payments to any creditor under the Plan, the Creditor may issue a Notice of Default to the Debtor in the following two ways: (1) by e-mail to Debtor's counsel and (2) by US Mail, 1st class, to the Debtor. If the Debtor fails, within 21 days, to cure the default or otherwise resolve the default to the satisfaction of the Creditor, the Section 362(a) Automatic Stay shall be automatically lifted as to that creditor.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[X ] List of Debtor's Assets at Fair Market Value, annexed as Exhibit 1 .

[X] Debtor's Liabilities, annexed as Exhibit 2

[ ] Financial forecast for the Debtor, annexed as Exhibit .

[X] Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit 3.

[X] Debtor's most recent post-petition operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit 3

[ ] Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit .

[X] Summary of Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit 4.

[ ] Summary of Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit .

[ ] Summary of Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit .

[X] Cash Flow Projections in Support of the Plan Feasibility, annexed as Exhibit 5

[X] Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit 6.

[X] Liquidation Analysis, annexed as Exhibit 7.

# ARTICLE 8
# FREQUENTLY ASKED QUESTIONS

What are the Debtors (Paul and Michelle Bassett) Attempting to Do in Chapter 11? Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

Why Am I Receiving This Plan? In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

How Do I Determine Which Class I Am In? To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. [Paragraph/Section]
lists all classes of claimants and their types of claims.

Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important? Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]? Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Am I Entitled to Vote on the Plan? Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

How Do I Determine Whether I Am in an Impaired Class? Sections 2.1 and 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

When Is the Deadline by Which I Need to Return My Ballot? The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is TO BE DETERMINED BY THIS COURT. Ballots should be mailed to the following address:

Ryan Blay
WM Law

15095 W. 116th St.
Olathe, KS 66062
or via e-mail to blay@wagonergroup.com

How Do I Determine When and How Much I Will Be Paid? In Article 2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.** Administrative Claimant: Any person entitled to payment of an Administration Expense.

**9.3.** Administrative Convenience Class: A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** Administrative Expense: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

9.5 Administrative Tax Claim: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** Allowed Claim: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.** Allowed Priority Tax Claim: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** Allowed Secured Claim: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.** Allowed Unsecured Claim: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.** Bankruptcy Code or Code: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.** Bankruptcy Court: The United States Bankruptcy Court for the Western District of Missouri

**9.12.** Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure.

**9.13.** Cash: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** Chapter 11 Case: This case under chapter 11 of the Bankruptcy Code in which Paul and Michelle Bassett (deceased) are the Debtors-in-Possession.

9.15 Claim: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.** Class: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.** Confirmation: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.** Confirmation Date: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.** Confirmation Hearing: The hearing to be held on DATE TO BE DETERMINED, 2026 to consider confirmation of the Plan.

**9.20.** Confirmation Order: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.** Creditor: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.** Debtor and Debtor-in-Possession: Paul and Michelle Bassett (deceased), the debtors-in-possession in this Chapter 11 Case.

**9.23.** Disputed Claim: Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.** Distributions: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.** Effective Date: The Effective Date of the plan is 30 days after entry of the order confirming the plan, unless the confirmation order provides otherwise.

**9.26.** Equity Interest: An ownership interest in the Debtor.

**9.27.** Executory Contracts: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.** Final Order: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.** IRC: The Internal Revenue Code

**9.30.** Petition Date: July 17, 2025 the date the chapter 11 petition for relief was filed.

**9.31.** Plan: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.** Priority Tax Claim: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.** Reorganized Debtor: The Debtor after the Effective Date.

**9.34.** Schedules: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.** Secured Creditor: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.** Trustee: Norman Rouse, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.** Unsecured Creditor: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

By: /s/ Paul Bassett

By: /s/ Ryan A. Blay

Ryan A. Blay
State Bar No. KS-001066
WM Law
15095 W. 116th St.
Olathe, KS 66062
blay@wagonergroup.com
telephone: (913) 422-0909

## EXHIBIT 5 - PROJECTIONS OF CASH FLOW/EARNINGS POST CONFIRMATION PERIOD

| | **Year 1** | **Year 2** | **Year 3** | **Year 4** |
|---|---|---|---|---|
| | **5/2026-4/2027** | **5/2027-4/2028** | **5/2028-4/2029** | **5/2029-4/2030** |
| | | | | |
| **Income:**[1] | $178516 | $178,516 | $178,516 | $187,441.80 |
| **Personal Expenses**[2]: | $120,000 | $120,000 | $120,000 | $126,000 |
| | | | | |
| Net: | $58,516 | $58,516 | $58,516 | $61,441.80 |
| Administrative – Subchapter V Trustee fees, attorneys' fees, MODOR Administrative claim (#38) | $11,208 | $6,000 | $ | |
| Missouri Department of Revenue Claim 3) | $2,255.64 | $2,255.64 | $ | |
| Missouri Department of Revenue (Claim 34) | $4,636.44 | $4,636.44 | | |
| Nebraska Furniture Mart | $2095.92 | $2095.92 | $ | |
| Internal Revenue Service | $96.72 | 0 | 0 | |
| Ally | $5993.28 | $5993.28 | $5993.28 | |
| Unsecured Creditors | $55,000, including a $25,000 lump sum payment on the effective date | $35,000 | $50,000 | $60,000 |
| [redacted] | | | | |
| **Total Plan Payments** | **$81,286 Year 1** | **$ 55,981.28 Year 2** | **$55,993.28 Year 3** | **$60,000 Year 4** |
| | | | | |
| Income after payment of plan payments: | $2230 | $2,534.72 | $2522.72 | $1,441.80 |
| | | | | |

[2] During the case, Debtor's mortgage with Wood & Huston Bank increased from approximately $1650 per month to $2,222 per month. This amount includes principal, interest, and hazard insurance but not real estate taxes, which are separately paid. Those taxes were approximately $6,900 in December 2025. Expenses have been adjusted after the passing of debtor Michelle Bassett, leaving approximately $10,000 per month in expenses with an anticipated reduction in dry cleaning and home cleaning costs.

## Explanations of Income Breakdowns For Exhibit 5

As of February 2026, a typical bi-weekly paystub for Mr. Bassett as his salary of $239,029 yields gross pay of $9193.60 and net pay of $5,330.44. Mr. Bassett's salary is set to increase to $274,309 annually, although that increase, though announced, has not yet begun to reflect on his pay. For purposes of the projections from May 2026 through April 2029, Mr. Bassett will assume a biweekly paycheck of $10,550 gross and a net of approximately $6,116.

In addition to his income from the VA, Mr. Bassett receives $350/week from Sedalia Aesthetics. He does not receive pay or take money out of Bassett Holdings.

For a monthly income, Mr. Bassett is taking the $6,116 amount over 26 paychecks and $1400 to yield $14,651.33 per month, for an annual income of $175,815.96. This amount does not include bonuses or any extraordinary income such as life insurance proceeds received as one-off events. Debtor proposes to retain any bonuses received to ensure plan feasibility.

For expenses, the Debtor's 1Q 2026 monthly operating reports reflect $40,671.19 in expenses, exclusive of a one-time payment of $14,665 to the IRS for 2025 income tax liabilities. The $10,000 per month used for expenses is reasonably close to this average.

For years 4 of the Plan, the Debtor will assume a 5% increase in both income and expenses.

# EXHIBIT 6 - Cash on hand on the Effective Date

Cash on hand on the Effective Date: $35,000

Less –

| | |
|---|---|
| Amount of Administrative Expenses payable on effective date of Plan | $ 5,208 |
| Amount of statutory costs and charges | $0 |
| Amount of cure payments for executory contracts | $0 |
| Other Plan Payments due on Effective Date | $25,000 to unsecured creditors; $96.72 to Internal Revenue Service |
| Balance after paying these amounts…......... | $4965.28 |

The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| $32794.74 | Cash in the Debtor's bank account now |
| + $2205.26 | Additional cash Debtor will accumulate from net earnings between now and Effective Date Between April 1, 2026 and the Effective Date, |
| + $0 | Borrowing [state separately terms of repayment] |
| + 0 | Capital Contributions |
| + 0 | Other |
| $35,000 | Total [This number should match "cash on hand" figure noted above] |

EXHIBIT 7 - Liquidation Analysis

[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

Debtor's Estimated Liquidation Value of Assets

**Assets**

| | |
|---|---|
| a. Homestead real estate at 717 W. 6th St., Sedalia, MO | $376,803 |
| b. Date of filing bank accounts | $2,382.44 |
| c. Interest in Bassett Holdings, LLC, based on values of buildings and Amounts owed on mortgages + value in Merritt Wares LLC | $59,005 |
| d. Jewelry | $2,500 |
| e. Household Goods | $7,904.10 |
| f. Automobiles – 2015 Porsche Macan, 2017 Lincoln Continental and 1976 Cadillac El Dorado | $23,886 |
| g. Electronics | $2500 |
| h. Clothing | $600 |
| i. Investment property (such as stocks, bonds or other financial assets) | $ |
| j. Lawsuits or other claims against third-parties | $0 |
| k.IRA and TSP | $152,384.93 |
| l. Others – golf cart, used and pull behind trailer | $1,000 |
| m. Life insurance on Ms. Bassett received by debtor post-petition | $36,000 |
| | |
| Total Assets at Liquidation Value | $664,965.47 |

**Less:**

| | |
|---|---|
| Secured creditors' recoveries | $262,958.34 (NFM, Ally, Porsche Credit, Wood & Huston Bank) |

**Less:**

| | |
|---|---|
| Chapter 7 trustee fees and expenses | $13,000 |

**Less:**

| | |
|---|---|
| Chapter 11 Administrative Expenses, if appropriate | $ |

**Less:**

Priority claims, excluding Administrative Expense claims

$15,510.31

[Less:

| | |
|---|---|
| Debtor's claimed exemptions] | $177,084.93 |
| (1) Balance for unsecured claims | $196411.89 |
| (2) Total dollar amount of unsecured claims | $2,362,765.52 |

Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation: **6.85%**

Percentage of Claims Which Unsecured Creditors Will Receive **8.46%**